IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| **KENNETH THOMAS,** | ) | |
| | ) | |
| Petitioner, | ) | Criminal No. 1:02cr004 |
| | ) | |
| v. | ) | Civil Action No. 1:05cv209 |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER**

The matter is before the Court on petitioner Kenneth Edmond Thomas's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. Both Thomas and the government have fully briefed the issues raised in the motion and the matter is now ripe for disposition.[1]

I.

A brief recitation of the substantive and procedural facts of this case is appropriate. On April 4, 2002, following a two-day jury trial, Thomas was convicted on both counts of a two-count indictment charging him with (i) conspiracy to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 846, and (ii) distribution of 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1).

At trial, the government presented the testimony of numerous witnesses, including the testimony of co-conspirators Anthony Orr, Jermaine Key, and Je Brandford. Orr testified that he

---

[1] Oral argument is dispensed with because the facts and legal contentions are adequately set forth in the existing record and oral argument would not aid the decisional process. *See United States v. Yearwood*, 863 F.2d 6, 7 (4th Cir. 1988) (recognizing that "[a] hearing is not required ... on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief").

purchased at least 20 grams of crack cocaine from Thomas between October 1995 and August 1996. In this regard, Orr testified that he conducted approximately five crack cocaine transactions with Thomas outside the Southern Towers apartment complex in Alexandria, Virginia. During each of these transactions, Orr purchased either 3.5 grams or 7 cracks of crack cocaine from Thomas.

Key testified that he had purchased significant sums of crack cocaine from Thomas. According to Key, he bought in excess of 3 kilograms of crack cocaine from Thomas on numerous occasions between November 1998 and March 2000 and in various locations in the Washington, D.C. Metropolitan area. Specifically, Key purchased 31 grams on one occasion, 62 grams on at least ten occasions, and 125 grams on approximately twenty occasions. Additionally, at the time of his arrest, Key was in possession of 37.8 grams of crack cocaine he had purchased from Thomas.

Bradford testified at trial that he had sold powder cocaine to, and purchased crack cocaine from, Thomas on several occasions between August 1, 2001 and October 12, 2001. In this regard, Bradford testified that he engaged in approximately four cocaine transactions with Thomas during the course of the conspiracy. Specifically, on one occasion in August 2001, he sold approximately 750 grams of powder cocaine to Thomas and observed Thomas convert an additional 250 grams of powder cocaine to crack cocaine. He also observed a handgun inside Thomas's residence. Thereafter, in September 2001, Bradford sold an additional 3 kilograms of powder cocaine to Thomas at Thomas's Maryland residence. In early October 2001, Bradford sold another 4 kilograms of powder cocaine to Thomas for $76,000. And finally, on October 10, 2001, Bradford purchased 2 kilograms of crack cocaine from Thomas.

The government also presented physical evidence obtained during a lawful search at

Thomas's residence in Temple Hills, Maryland, including 1.761 kilograms of powder cocaine, 137.3 grams of crack cocaine, and 12.7 grams of marijuana. Also seized from defendant's residence were three handguns, ammunition, and approximately $16,948 in United States currency.

At his sentencing hearing on August 30, 2002, Thomas was sentenced to 360 months imprisonment, 5 years of supervised release, and a $200 special assessment. This sentence was imposed based on a finding that the total amount of drugs attributable to Thomas converted to 114,024 kilograms of marijuana. Additionally, a two-level enhancement was applied for possession of a firearm in connection with drug trafficking pursuant to U.S.S.G. § 3D1.1(b)(1), and a two-level enhancement for obstruction of justice was applied pursuant to U.S.S.G. § 3C1.1 for a threatening statement Thomas made to a witness while in a courthouse cellblock. The applicable sentencing guidelines range, based on an adjusted offense level of 42, was 360 months to life.

Thomas appealed his conviction and sentence to the United States Court of Appeals for the Fourth Circuit. On appeal, Thomas was represented by different counsel. Thomas argued on appeal (i) that the district court had erred by denying his motion to suppress, (ii) that the voir dire improperly intimidated jurors because the district court, at defendant's request, inquired whether prospective jurors or members of their immediate families had any previous involvement with illegal drugs or illegal firearms, (iii) that the district court erred by relying on the testimony of his co-conspirators in determining drug quantities attributable to him, and (iv) that the district court erred by applying a two-level obstruction of justice enhancement. The Fourth Circuit denied Thomas's appeal in all respects. *See United States v. Thomas*, 77 Fed. Appx. 673, 675 (4th Cir. 2004). Thereafter, Thomas filed a petition for writ of *certiorari*, which the Supreme Court

denied on February 23, 2004. *See Thomas v. United States*, 540 U.S. 1208 (2004). Thomas also filed a *pro* se petition for rehearing by the Fourth Circuit, which was denied as untimely on March 15, 2004. Following denial of his petition for rehearing, Thomas filed a second petitioner for a writ of *certiorari*, which was denied on June 7, 2004.

Exactly one year after his original cert petition was denied, on February 23, 2005, Thomas filed this timely (barely) motion to vacate, set aside, or correct sentence. Thomas attacks his sentence on three distinct grounds:

> (i) that the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), should be applied retroactively to invalidate his sentence because his sentence, imposed based findings of fact made by a judge rather than a jury, violated his Fifth and Sixth Amendment rights;
>
> (ii) that he received ineffective assistance of counsel because his counsel,
>
>> (a) failed to raise a *Booker*-like challenge at the time of sentencing;
>>
>> (b) failed to seek a two-level sentencing reduction for a minor role in the conspiracy pursuant to U.S.S.G. § 3B1.2; and
>>
>> (c) provided ineffective assistance by requesting a voir dire question that created a "pro-government bias."

Each claim is separately addressed.

II.

**A. *Booker* Does Not Apply Retroactively**

In *United States v. Booker*, the Supreme Court held that the United States Sentencing Guidelines, as then applied, violated the Sixth Amendment to the extent that they allowed a defendant's sentence to be increased based on findings of fact made by a judge (other than a prior conviction) rather than by a jury beyond a reasonable doubt, and that the proper remedy was to render the Sentencing Guidelines advisory. *See* 125 S. Ct. at 755-56, 56-67. Thomas argues that

the procedural rule announced in *Booker* should be applied retroactively to invalidate his sentence and require that he be re-sentenced under the post-*Booker* advisory Sentencing Guidelines regime. Nevertheless, it is now settled that this new rule of criminal procedure is not retroactively applicable to cases that were final before the date of the *Booker* decision.[2] And Thomas's conviction became final on February 23, 2004, the date the Supreme Court denied his petition for a writ of *certiorari*, nearly a year before *Booker* was decided. Thus, *Booker*'s holding cannot be invoked here and, therefore, Thomas is not entitled to be re-sentenced under an advisory Sentencing Guidelines regime.

**B. Ineffective Assistance of Counsel**

A two-prong test applies to ineffective assistance of counsel claims. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). A defendant must show (1) that her counsel's performance "fell below an objective standard of reasonableness," and (2) that "the deficient performance prejudiced the defense." *Id.* Thomas has filed three ineffective assistance of counsel claims; all three fail to meet the *Strickland* standard.

*1. Failure to raise* Booker-*like challenge*

Thomas's first claim falls on ths first prong of the *Strickland* analysis. It is well-settled that "an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law." *Kornahrens v. Evatt*, 66 F.3d 1350, 1260 (4th Cir. 1995). Thus, defense counsel's performance at sentencing did not fall below an objective standard of reasonableness by failing to raise a *Booker*-like argument. At the time of Thomas's trial, sentencing, and appeal, the Supreme

---

[2] *See United States v. Hernandez*, __ F. Supp. 2d __ (E.D. Va. 2005) (Ellis, J.); *Lloyd v. United States*, 2005 U.S. App. LEXIS 8699 (3d Cir. 2005); *Guzman v. United States*, 404 F.3d 139 (2d Cir. 2005); *Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005); *Varela v. United States*, 400 F.3d 864 (11th Cir. 2005); *McReynolds v. United States*, 397 F.3d 497 (7th Cir. 2005).

Court had not yet issued its decision in *Booker*, and thus defense counsel's performance was not rendered ineffective because he failed to anticipate this change. Morever, the rule announced in *Booker* was not anticipated by most competent counsel or jurists, even after the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).[3] Thus, counsel did not act unreasonably by failing to raise it.

    *2. Failure to seek minor-role adjustment*

Next, Thomas claims that defense counsel was ineffective in that he failed to argue that Thomas was entitled to a sentencing reduction for a minor role in the conspiracy under U.S.S.G. § 3B1.2(b) (two-level decrease for a defendant who is "less culpable than most other participants" but whose role cannot be described as "minimal). Thomas's second ineffective assistance claim also fails the first prong of the *Strickland* analysis.

Counsel's performance did not fall below an objective standard of reasonableness by failing to seek a minor-role sentencing adjustment because the motion, if raised, would have been denied. The record reflects that Thomas's role in the conspiracy plainly was not minor, but central. Specifically, the evidence at trial shows that Thomas was the seller of a substantial amount of powder cocaine and crack cocaine. *See United States v. Brooks*, 957 F.2d 1138, 1149 (4th Cir. 1992) (holding that co-conspirator in drug conspiracy did not play minor role when promoted to "seller ... a central position in a drug distribution conspiracy").

---

    [3] *See, e.g.*, *Fuller v United States*, 398 F.3d 644, 650 n.4 (7th Cir. 2005) (Petitioner "does not argue that his trial counsel was ineffective for failing to anticipate *Blakely v. Washington*, 124 S. Ct. 2531 (2004) and [*Booker*] ... . Indeed, 'no such argument would be tenable.'") (citation omitted); *Muniz v. United States*, 360 F. Supp. 2d 574, 579 (S.D.N.Y. 2005) ("[B]ecause counsel's performance must be judged as of the time of counsel's conduct [post-*Apprendi* and pre-*Blakely*], [petitioner's] attorney cannot be deemed ineffective for failing to anticipate a potential Sixth Amendment challenge as alleged in Booker."); *Lach v. United States*, 2005 U.S. Dist. LEXIS 9265 at *1 n.1 (D. Utah 2005) (rejecting ineffective assistance claim when petitioner sentenced after *Blakely* but pre- *Booker*).

Moreover, the evidence reflects that Thomas was directly involved as a buyer or seller in every drug transaction considered in determining his sentence. As the Fourth Circuit noted on appeal, every drug quantity for which Thomas was held responsible was an amount of crack or powder cocaine his co-conspirators testified they bought from or sold directly to Thomas himself, or was an amount found in Thomas's home. *See United States v. Thomas*, 77 Fed. Appx. 673, 675 (4th Cir. 2004) ("[T]hese quantities were not just reasonably foreseeable to Thomas, they were actually known to him."). Thus, Thomas was at least as culpable as each of his co-conspirators in each drug transaction for which he was held responsible. To the extent that Thomas seeks to challenge the credibility of the testimony of his co-conspirators, that challenge to his sentence was already raised and denied on appeal. *See Thomas*, 77 Fed. Appx. at 675 (rejecting argument that district court erred by relying on testimony of co-conspirators in determining drug quantities and types attributable to him). Thus, counsel was plainly not objectively unreasonably by failing to request a minor-role adjustment because to raise it would have been futile.

   3. *Voir Dire*

Finally, Thomas argues that his jury may have been tainted with a pro-government bias because defense counsel requested that the district court inquire "whether or not anybody has ever had, in their own personal family or immediate family, drug or gun impact." This defense request was essentially granted.[4] Even so, Thomas claims this defense-requested inquiry served to intimidate jurors. He points out that jurors were required to answer this question in front of an

---

[4] Defense counsel specifically requested that the Court inquire "whether or not anybody has ever had, in their own personal family or immediate family, drug or gun impact." (Trial Transcript, Vol. 1, p. 84). In response to this request, the Court inquired of the venire "whether you or any member of your family has had any involvement with illegal narcotics or firearms." (Trial Transcript, Vol. 1, p. 86).

Assistant United States Attorney, who was, at the time, involved in prosecuting a drug case. Thus, Thomas concludes, potential jurors forced to reveal past illegal conduct might believe that if they returned a defense verdict that the government would seek retribution against them in the form of investigation and possible prosecutions.[5] According to Thomas, objectively reasonable counsel would not have requested this question during *voir dire*.

Thomas's third claim is also meritless. The Supreme Court has warned that when considering whether an attorney has provided effective assistance, "every effort [must] be made to eliminate the distorting effects of hindsight ... and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. And because this evaluation is inherently difficult, a defendant must overcome a "strong presumption" that the challenged action "might be considered sound trial strategy." *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

In this case, the question defense counsel requested would have elicited responses not only from those who may have been implicated in possessing illegal drugs or guns, but also from innocent victims of illegal drug use or gun violence. Further, the question would also serve to identify jurors who had suffered as family members of drug abusers and whose views would need to be explored for potential bias against the defendant. Thus, the question was sound trial strategy designed to gauge the venire's exposure to and knowledge of illegal drugs and illegal guns.[6]

Moreover, even assuming, *arguendo*, that defense counsel's request to pose this question

---

[5] Thomas argued on direct appeal that the district court erred by asking this question during the *voir dire* because the question improperly intimidated the jury, but the Fourth Circuit, without finding that any error in fact occurred, concluded that Thomas invited any error by requesting this line of questioning. *See Thomas*, 77 Fed. Appx. at 674-75 (citing *United States v. Jackson*, 124 F.3d 607, 617 (4th Cir. 1997)).

[6] In any event, this question is part of standard *voir dire* in drug cases.

to the jury failed the first prong of the *Strickland* test, Thomas has failed to establish that this deficient performance prejudiced his defense.  Defendant has offered no evidence in support of his speculation that a biased jury was, in fact, impaneled.  Thus, his third ineffective assistance claim also fails.[7]

For good cause shown and for the reasons stated,

It is **ORDERED** that petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is **DENIED**.

The Clerk is directed to send a copy of this Order to all counsel of record and to place this matter among the ended causes.

Alexandria, Virginia
May 26, 2005

_____/s/_____
T. S. Ellis, III
United States District Judge

---

[7] Because Thomas's claims have all been dismissed, the evidentiary hearing he requests is unnecessary.